IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BRADLEY L. MAUNEY,          )
                            )
            Plaintiff,      )
                            )
      v.                    )    1:17CV280
                            )
A.W. CUGINO, II, S.P. HOSIER,  )
CITY OF ARCHDALE, and       )
CITY OF HIGH POINT,         )
                            )
            Defendants.     )

## MEMORANDUM OPINION AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE

Plaintiff, Bradley L. Mauney, brings this federal civil rights action against Defendants, Detective A.W. Cugino, II ("Cugino"), Detective S.P. Hosier ("Hosier"), the City of Archdale, North Carolina ("Archdale"), and the City of High Point, North Carolina ("High Point"), alleging violations of 42 U.S.C. § 1983, the Rehabilitation Act, and the Americans with Disabilities Act ("ADA"). (Docket Entry 42; see also Docket Entry 41 (allowing filing of Amended Complaint).) Defendants all filed both Motions to Dismiss (Docket Entries 46, 50) under Rule 12(b)(6) of the Federal Rules of Civil Procedure and Motions for Summary Judgment (Docket Entries 71, 74) under Rule 56 of those Rules. One set of Defendants, High Point and Hosier, explicitly incorporate the arguments made in their Motion to Dismiss into their Motion for Summary

Judgment. (Docket Entry 72 at 8.) However, as to all Defendants, the Summary Judgment Motions include all the arguments made in the Motions to Dismiss. The Court thus should treat the Motions to Dismiss as moot and directly address only the Motions for Summary Judgment.

## I. Plaintiff's Allegations and Claims

The Amended Complaint describes Plaintiff as a pretrial detainee housed in the Randolph County Jail (Docket Entry 42, ¶ 3), Defendant Cugino as a detective with the Archdale Police Department (id. ¶ 6), and Defendant Hosier as a detective with the High Point Police Department (id. ¶ 7). According to the Amended Complaint, on December 8, 2016, Defendants Hosier and Cugino "approached [Plaintiff] and put [him] in handcuff[s] behind [his] back and asked if [he] could hear or speak." (Id. ¶ 9.) The Amended Complaint further states that, when Plaintiff responded in the negative by shaking his head, the detectives (A) called for an interpreter waiting in their car, and (B) began to question him, despite the fact that the interpreter could not "see or understand [Plaintiff] while [his] hands were handcuffed behind [his] back." (Id.) The detectives allegedly then "gave up" and transported Plaintiff to the Archdale Police Department, where they continued to

attempt to question him with the interpreter present and Plaintiff handcuffed behind his back (such that the interpreter still could not assist him). (Id. ¶ 10.)

The Amended Complaint also asserts that "the Police refused to let [his] hands free from the handcuffs so [he] could communicate with [the] interpreter and [he] was even willing to cooperate with the police." (Id. ¶ 11.) In that regard, the Amended Complaint alleges that the interpreter "made demands to have [Plaintiff's] hands free so [he could] communicate with her," but that Defendants Cugino and Hosier refused. (Id.) According to the Amended Complaint, Defendant Cugino later took Plaintiff before a magistrate and disclosed Plaintiff's deafness. (Id. ¶ 12.) The magistrate then "typed on a computer and printed [a paper] out and told [Plaintiff] to sign the paper." (Id.) When Plaintiff inquired about an interpreter, Defendant Cugino allegedly replied, "'We can't get one' and threw [Plaintiff] in jail." (Id.)

The Amended Complaint sets out two claims for relief. The first states that "[t]he handcuffing, refusal to let [P]laintiff's hands free to communicate, and discrimination violated Plaintiff's rights and constituted [ ] a due process violation under [the] United States Constitution[ ,] 42 U.S.C.

§ 1983, [the] Rehabilitation Act of 1973, [and the] American[s] With Disabilities Act of 1990." (<u>Id.</u> ¶ 15.) The second states that the "[f]ailure to provide [an] interpreter at Magistrate Joshua Grant's hearing" violated the Constitution and the same statutes, as well as N.C. Gen. Stat. § 8B-2(d). (<u>Id.</u> ¶ 16.) Plaintiff brings the claims against all Defendants in both their individual and official capacities. (<u>Id.</u> ¶ 8.)

For relief, Plaintiff seeks a declaration that Defendants violated his rights, an injunction ordering 1) Defendants Cugino and Hosier to reinvestigate Plaintiff's case by allowing him to communicate with his hands free so that an interpreter can understand him, and 2) another hearing before a magistrate with an interpreter present. (<u>Id.</u> ¶ 21.) Plaintiff also demands compensatory damages in the amount of $88,000 against each Defendant "for mental anguish, loss of wage, loss of personal property, [and] loans defaulted due to being unable to work because [P]laintiff is incarcerated" (<u>id</u>. ¶ 22), as well as punitive damages in the amount of $1.5 million against each Defendant (<u>id</u>. ¶ 23).

## II.  Evidence Submitted by Defendants

Defendants submitted evidence showing the following pertinent facts:

On December 8, 2016, Defendant Hosier obtained a warrant in Guilford County, North Carolina, ordering Plaintiff's arrest on charges of indecent liberties with a child and sexual battery.  (Docket Entry 47-1.)  Similarly, Defendant Cugino and another detective, C.A. Chewning, procured a warrant in Randolph County, North Carolina, for Plaintiff's arrest for indecent liberties with a child.  (Id.)  Chewning and Defendant Hosier then went to arrest Plaintiff on these charges.  (Docket Entry 72-2, ¶ 9.)[1]  Defendants filed an audio recording of the encounter, as well as a typed transcript of that recording.  (Docket Entries 48-2, 48-3.)

The transcript, which the audio recording supports, shows that Detective Chewning and Defendant Hosier approached Plaintiff and asked if he was "Brad Mauney."  (Docket Entry 48-3 at 4.)[2]  They then identified themselves, told Plaintiff

_____

[1] So far as the record indicates, Defendant Cugino did not participate in any of the events described in the Amended Complaint. Defendants do not move to dismiss on this ground, but instead argue the case essentially as if Plaintiff had named Detective Chewning as a defendant in place of Defendant Cugino.  (Docket Entry 75 at 7 n.1.)

[2] Pin citations to the transcript refer to the page numbers that appear in the CM/ECF footer appended to the document upon filing.

that they needed to speak with him about a "couple of different things," and asked whether or not he could read lips. (_Id._) At that point, Defendant Hosier called for the interpreter. (_Id._) Defendant Hosier had directed the interpreter to wait in the car while initially approaching Plaintiff because of his prior felony record and a concern that he might flee or react violently during the arrest. (Docket Entry 72-2, ¶ 8.)

After the interpreter arrived, the transcript reflects the following exchange:

> DETECTIVE HOSIER: Okay. Tell him that we need to talk to him about some reports that we have.  Is he willing to talk to us about these reports?
> THE INTERPRETER: About--what about?
> DETECTIVE HOSIER: About some sexual assault allegations.
> THE INTERPRETER: Where?
> DETECTIVE HOSIER: In High Point and Archdale.
> THE INTERPRETER: Has--were there any--is there any warrant on me?
> DETECTIVE HOSIER: Well, we want to know if he's ready to talk to us.  If he's willing to talk to us about it.
> THE INTERPRETER: I'll have to ask a lawyer about that.
> DETECTIVE HOSIER: Okay.

(Docket Entry 48-3 at 5.)

Next, the audio recording captured the clear sound of the application of handcuffs, as corroborated by Defendant Hosier's Affidavit (Docket Entry 72-2, ¶ 11).  The transcript

reflects that Detective Chewning then took Plaintiff's cellular telephone and placed it in airplane mode, after which Plaintiff asked Detective Chewning to turn the telephone off, leading to an extended exchange about the seizure of the telephone. (See Docket Entry 48-3 at 6-9.) Defendant Hosier thereafter asked Plaintiff what he wanted to do with his truck, which Plaintiff apparently had parked near the scene of the arrest. (Id. at 9.) After deciding to move the truck to a nearby parking lot, Detective Chewning and Defendant Hosier obtained Plaintiff's keys and moved the truck, following an extended exchange due to Plaintiff's truck not starting in a typical fashion. (See id. at 9-14.) The audio recording (and transcript) then ends as Plaintiff's transportation from the scene begins. (See id. at 15.)

Defendant Hosier's Affidavit states that he applied the handcuffs behind Plaintiff's back based on "police policy and for public safety reasons," as well as his prior criminal record. (Docket Entry 72-2, ¶ 11.) The policy requires such handcuffing of all persons, even deaf persons. (Id.) According to Defendant Hosier, after affecting the arrest, he did not further question Plaintiff about the criminal charges. (Id. ¶¶ 12, 14.) The interpreter remained and interpreted for

Plaintiff until he went to a holding cell. (_Id._) Plaintiff asked to have his hands cuffed in front of him instead of behind him, but Defendant Hosier declined to change the position of the handcuffs due to police policy and the fact that Plaintiff became "highly agitated." (_Id._)

Following the filing of the Amended Complaint, Plaintiff pled guilty to, or was found guilty of, sex offenses in multiple counties and received prison sentences, which he continues to serve. (_See_ Docket Entries 47-3, 47-4.) Of note, Plaintiff entered an _Alford_ plea to one count of indecent liberties with a child in conjunction with the charges that resulted in his arrest in this case. (_See_ Docket Entry 47-2.)

### III. Summary Judgment Standards

"The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." _Anderson v. Liberty Lobby, Inc._, 477 U.S. 242, 248 (1986). The movant

bears the burden of establishing the absence of such dispute. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

In analyzing a summary judgment motion, the Court "tak[es] the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." <u>Henry v. Purnell</u>, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "Summary judgment is appropriate when the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." <u>Welton v. Durham Cty.</u>, No. 1:17CV258, 2018 WL 4656242, at *2 (M.D.N.C. Sept. 27, 2018) (unpublished) (citing Fed. R. Civ. P. 56(a)). "The moving party has the initial burden of demonstrating the absence of any material issue of fact; [however,] once the moving party meets its initial burden, the non-moving party must come forward with evidentiary material demonstrating the existence of a genuine issue of material fact requiring a trial." <u>Heggins v. City of High Point</u>, No. 1:16CV977, 2017 WL 6514681, at *2 (M.D.N.C. Dec. 20, 2017) (unpublished) (emphasis added); <u>see also</u> <u>Equal Emp't Opportunity Comm'n v. Womble Carlyle Sandridge & Rice, LLP</u>, No. 1:13CV46, 2014 WL 2916851, at *4 (M.D.N.C. June 26, 2014) (unpublished) ("On those issues for which the non-moving party has the burden of

proof, it is his or her responsibility to oppose the motion for summary judgment with affidavits or other admissible evidence . . . ."), aff'd, 616 F. App'x 588 (4th Cir. 2015).

In assessing such matters, "the Court [does] not consider[ ] 'facts' set forth in [summary judgment] briefs that are not supported by citations to admissible evidence." Maisha v. University of N.C., No. 1:12CV371, 2015 WL 277747, at *1 (M.D.N.C. Jan. 22, 2015) (unpublished), aff'd, 641 F. App'x 246 (4th Cir. 2016). Additionally, "[u]nless [D]efendants admitted [an] alleged fact in their [A]nswer, the Court [does] not consider [the] unverified statements in [Plaintiff's Amended C]omplaint. [Such] allegations are not under oath and are not evidence." Id. (internal parenthetical citations omitted) (citing Higgins v. Scherr, 837 F.2d 155, 156-57 (4th Cir. 1988)).

Nor do any statements in Plaintiff's Responses (Docket Entries 83, 84) constitute evidence that the Court can consider at the summary judgment stage. The Roseboro Letters sent to Plaintiff on February 1 and 13, 2019, informed him that "[his] failure to respond, or if appropriate, to file affidavits or evidence in rebuttal within the allowed time may cause the [C]ourt to conclude that the [D]efendant(s')

contentions are undisputed . . . ." (Docket Entries 76 at 1
(emphasis added); <u>accord</u> Docket Entry 78 at 1.) Any factual
assertions in Plaintiff's Responses "do[] not subject [him] to
the penalty of perjury for any misstatements" and thus cannot
defeat an opposing summary judgment motion. <u>Turner v. Godwin</u>,
No. 1:15CV770, 2018 WL 284978, at *3 (E.D. Va. Jan. 3, 2018)
(unpublished); <u>see also</u> <u>United States v. White</u>, 366 F.3d 291,
300 (4th Cir. 2004) (explaining that courts should not
consider unsworn arguments as evidence in opposition to
summary judgment motion). Moreover, although a verified
complaint may serve as an affidavit for summary judgment
purposes, <u>see, e.g.</u>, <u>Smith v. Blue Ridge Reg'l Jail Auth.-
Lynchburg</u>, No. 7:17-CV-00046, 2017 WL 6598124, at *2 n.5 (W.D.
Va. Dec. 26, 2017) (unpublished), Plaintiff submitted an
unverified Amended Complaint in this case (<u>see</u> Docket Entry
42 at 7). Therefore, the allegations in the Amended Complaint
do not constitute evidence.

## IV. Rehabilitation Act/ADA Claims

The Fourth Circuit has "construe[d] the ADA and
Rehabilitation Act to impose similar requirements. Thus,
despite the different language that these statutes employ,
they require a plaintiff to demonstrate the same elements to

establish liability." _Halpern v. Wake Forest Univ. Health Scis._, 669 F.3d 454, 461 (4th Cir. 2012) (internal citations omitted). "The 'public services' subchapter of the ADA, 42 U.S.C. § 12131, provides, 'No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.' _Id._ § 12132." _Semereth v. Board of Cty. Comm'rs Frederick Cty._, 673 F.3d 333, 336 (4th Cir. 2012) (internal brackets omitted). Further, "'[d]iscrimination' includes 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.' _Id._ § 12112(b)(5)(A) (from Title I's definition)." _Semereth_, 673 F.3d at 336. These provisions apply to police investigations of criminal conduct. _Id._ at 339. However, a plaintiff must establish an actual injury from any alleged ADA or Rehabilitation Act violation in order to state a valid claim for relief. _See_ _Rosen v. Montgomery Cty. Md._, 121 F.3d 154, 158 (4th Cir. 1997).

Before addressing the merits of Plaintiff's claims, the Court first should note that "the ADA and the Rehabilitation

Act do not provide any causes of action against individual defendants in their individual capacities." <u>Keith-Foust v. North Carolina Cent. Univ.</u>, No. 1:15CV470, 2016 WL 4256952, at *13 (M.D.N.C. Aug. 11, 2016) (unpublished). Therefore, such claims against Defendants Hosier and Cugino (or Detective Chewning) fail as a matter of law.

Turning now to the remaining aspects of Plaintiff's ADA and Rehabilitation Act claims, no question appears to exist as to whether Plaintiff meets the disability and "qualified individual" elements. Likewise, as stated above, the ADA and Rehabilitation Act apply to police investigations. Therefore, the Court need only consider whether Defendants denied Plaintiff a "reasonable accommodation," <u>Seremeth</u>, 673 F.3d at 336, in a manner that actually injured him, <u>see</u> <u>Rosen</u>, 121 F.3d at 158.

Here, looking at the facts in the light most favorable to Plaintiff, Defendant Hosier and Detective Chewning knew of Plaintiff's disability when they went to arrest him and knew that he could not communicate well without an interpreter. Although they provided an interpreter, they handcuffed Plaintiff behind his back, which limited, to some extent, his ability to communicate even with the interpreter present.

However, Defendant Hosier and Detective Chewning possessed a warrant for Plaintiff's arrest for serious sex crimes. Service of the warrant did not require communication with Plaintiff about the circumstances of the charges or additional investigation prior to arrest.

Further, police policy reasonably dictated placement of handcuffs behind Plaintiff's back for safety purposes. Nor did circumstances that developed after Plaintiff's arrest necessitate deviating from that policy. Shortly after Defendant Hosier and Detective Chewning approached Plaintiff, he invoked his right to speak with an attorney before answering questions about the allegations against him. The only evidence in the record indicates that this action occurred prior to Plaintiff's handcuffing, but, whether handcuffed or not, the undisputed evidence establishes that Plaintiff invoked that right and all questioning about the charges against him ceased. From that point on, the parties needed only to secure Plaintiff's telephone and truck before transporting him to the Archdale Police Department. They accomplished those tasks in just a few minutes time through back and forth communication. Plaintiff has pointed to no

necessary communication which failed to occur.  (<u>See</u> Docket
Entries 83, 84.)

The same analysis applies to Plaintiff's post-arrest
detention and bail hearing.  The interpreter remained present
for Plaintiff's detention prior to his bail hearing and
Defendant Hosier and Detective Chewning did not further
question Plaintiff regarding his alleged crimes.  Plaintiff
again has failed to identify any important communication that
did not take place due to lack of reasonable accommodation.
(<u>See</u> <u>id.</u>)  He did state in answer to interrogatories during
discovery that he "changed [his] mind," about speaking with
officers and that he could only spell single words, rather
than communicate in sentences, while handcuffed.  (Docket
Entry 65, ¶¶ 2, 3.)  However, Plaintiff possessed no right to
speak with officers after invoking his right to consult an
attorney and has shown no injury that resulted from any lack
of such communication.  (<u>See</u> <u>id.</u>; <u>see also</u> Docket Entries 83,
84.)  In particular, Plaintiff has not even described any
specific information that he could not convey.  (<u>See</u> Docket
Entry 65, ¶¶ 2, 3; <u>see also</u> Docket Entries 83, 84.)

As for the bail hearing, Defendant Hosier left prior to
that hearing and the interpreter left with him.  Nevertheless,

as Plaintiff has acknowledged, the magistrate communicated with Plaintiff by printing paperwork. (Docket Entry 42, ¶ 12.) Plaintiff also produced in discovery the handwritten notes he and Detective Chewning used to communicate during the hearing. (Docket Entry 65, Ex. A-1.) Nor has Plaintiff even alleged that any important failure to communicate actually happened during the hearing, much less come forward with evidence to show any effect on the outcome of the hearing due to a failure to communicate. (See Docket Entries 83, 84.)

In the end, the record simply cannot support a finding that handcuffing Plaintiff behind his back violated his rights under the ADA (or Rehabilitation Act). The evidence in the record shows that the authorities and Plaintiff communicated sufficiently during all relevant events to take care of all necessary business. Moreover, Plaintiff has failed to produce any evidence that he suffered any harm as a result of any communication difficulties.[3] For these reasons, the Court

_____

[3] Plaintiff's request for relief in his Amended Complaint and his answers to Defendants' interrogatories in discovery are telling in this regard. Plaintiff seeks a preliminary injunction commanding Defendants Cugino and Hosier to "reinvestigate" his case with Plaintiff's hands free so that he can explain the situation. (Docket Entry 42, ¶ 21.) However, at the time of Plaintiff's arrest, Defendant Hosier and Detective Chewning already possessed arrest warrants. Plaintiff could not then escape arrest or custody by explaining the situation. Thus, any lack of ability to explain himself did not cause Plaintiff's arrest or prosecution and, in any event, his ultimate conviction confirms that he possessed no legitimate explanation. The outcome of the state court criminal proceeding related to this case also moots any request for

should enter summary judgment against Plaintiff on his claims under the ADA and Rehabilitation Act.[4]

## V. Section 1983 Claims

To establish a Section 1983 claim, Plaintiff must prove (1) that Defendants "deprived [him] of a right secured by the Constitution and laws of the United States[ ] and (2) that they deprived [him] of this constitutional right under color of State statute, ordinance, regulation, custom, or usage." Mentavlos v. Anderson, 249 F.3d 301, 310 (4th Cir. 2001) (internal brackets and quotation marks omitted). Plaintiff contends that Defendants violated his rights under the Fourteenth Amendment of the United States Constitution and, consequently, Section 1983, by handcuffing his hands behind his back during his arrest and his detention at the Archdale Police Department pending his bail hearing. He also claims

_____

injunctive relief. Further, Plaintiff cannot receive damages for his incarceration because such damages would necessarily call the validity of his state court conviction into question. See Heck v. Humphrey, 512 U.S. 477 (1994). Plaintiff's reliance on his incarceration as the source of his damages points to a serious flaw in his case, namely that the warrant procured prior to his arrest, not any lack of communication with the arresting officers, led to his arrest, incarceration, and any financial harm.

[4] Plaintiff cites N.C. Gen. Stat. § 8B-2(d) as requiring the arresting officers to provide an interpreter for him. (Docket Entry 42, ¶ 18.) They did provide one during his arrest and pre-hearing detention. As for the hearing itself, Plaintiff again has produced no evidence of any harm stemming from any failure to provide an interpreter, as required for liability under the ADA and Rehabilitation Act.

that Defendants violated those same rights by failing to provide a sign language interpreter at his bail hearing.

Defendants Hosier and Cugino deny that their actions violated Plaintiff's rights and invoke the doctrine of qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "The protection extends to all but the plainly incompetent or those who knowingly violate the law." Raub v. Campbell, 785 F.3d 876, 881 (4th Cir. 2015) (internal quotation marks omitted). Under this doctrine, "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Id. (internal quotation marks omitted; brackets in original). In evaluating qualified immunity, courts consider "(1) whether the plaintiff has established the violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." Id. The Court may address these prongs in

whatever order "will best facilitate the fair and efficient disposition of [this] case." Pearson, 555 U.S. at 242.

A right qualifies as "clearly established . . . [if] it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001), overruled in part on other grounds, Pearson, 555 U.S. at 227. In other words, "[t]he unlawfulness of the action must be apparent when assessed from the perspective of an objectively reasonable official charged with knowledge of established law." Lopez v. Robinson, 914 F.2d 486, 489 (4th Cir. 1990). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citation omitted). In ascertaining whether a right qualified as clearly established at the time of the challenged conduct, courts within this circuit generally "need not look beyond the decisions of the Supreme Court, th[e Fourth Circuit], and the highest court of the state in which the case arose." Edwards v. City of Goldsboro, 178 F.3d 231, 251 (4th Cir. 1999) (internal quotation marks

omitted). However, in the absence of controlling precedent, a right may qualify as clearly established (1) if it appears "manifestly included within more general applications of the core constitutional principles invoked" or (2) based on "a consensus of cases of persuasive authority from other jurisdictions." Booker v. South Carolina Dep't of Corr., 855 F.3d 533, 539-39 (4th Cir. 2017) (emphasis and internal quotation marks omitted). Conversely, decisions from other jurisdictions that decline to find constitutional violations in similar circumstances can justify application of qualified immunity, in the absence of controlling authority. See Pearson, 555 U.S. at 244-45.

Plaintiff contends that the arresting officers violated his rights by handcuffing him behind his back, restricting his communication with the interpreter during his arrest and pre-hearing detention. However, by handcuffing Plaintiff in that way, Defendant Hosier and Detective Chewning followed reasonable police policies and treated him as the relevant policies required them to treat all arrestees regardless of hearing ability. (See Docket Entry 72-2, ¶¶ 11, 14 (confirming Defendant Hosier's reliance on police policy during Plaintiff's arrest, which required handcuffing of all

arrestees behind their backs); Docket Entry 86-1 at 3-4 (same as to Detective Chewning).)  Plaintiff seeks a special accommodation exempting him from such policies because of his disability, but state and local government officials "are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions toward such individuals are rational. . . .  If special accommodations for the disabled are to be required, they have to come from positive law [i.e., the ADA and Rehabilitation Act] and not through the Equal Protection Clause." <u>Board of Trustees of Univ. of Ala. v. Garrett</u>, 531 U.S. 356, 367-68 (2001); <u>see also</u> <u>Tennessee v. Lane</u>, 541 U.S. 509, 522-34 (2004) (recognizing that Title II of ADA enforces aspects of Due Process Clause by adding protection beyond basic requirements of Fourteenth Amendment).

As discussed above, the record cannot sustain a claim under the ADA or Rehabilitation Act based on Plaintiff's arrest.  Moreover, Defendant Hosier and Detective Chewning behaved rationally by bringing an interpreter to assist them in communicating with Plaintiff, but adhering to policies requiring handcuffing behind an arrestee's back.  The evidence in the record additionally shows that, during Plaintiff's

arrest, Defendant Hosier and Detective Chewning adequately communicated with Plaintiff. They sought to speak with him about the allegations, they learned he wished to speak with counsel instead, and they communicated extensively with him about his telephone and truck.

Plaintiff's Responses to the Motions for Summary Judgment express his opinion that finger-spelling and mouthing words do not afford an "effective" means of communication for a deaf person. (Docket Entry 83 at 2-3; Docket Entry 84 at 2-3.) Although the transcript reveals moments when the interpreter struggled to understand Plaintiff, those moments remained few and fleeting. Further, the transcript confirms that ultimately the interpreter always could convey Plaintiff's words to the arresting officers. Based on this record, no violation of Plaintiff's Fourteenth Amendment rights occurred during his arrest. In any event, no reasonable officer would have perceived the circumstances of Plaintiff's arrest as violating any clearly established Fourteenth Amendment right.

The same basic considerations defeat Plaintiff's Section 1983 claims regarding his pre-hearing detention and bail hearing. The interpreter remained present during that period of detention and communication occurred in written form during

the bail hearing. Plaintiff has not come forward with any evidence of any important matter that went uncommunicated during these events. The officers again complied with federal disability-related statutes and behaved rationally in compliance with the Fourteenth Amendment.

In sum, the Court should enter summary judgment in favor of Defendants Hosier and Cugino (or Detective Chewning) on Plaintiff's Section 1983 claims.

As for any official capacity claims, which would lie against Defendant Hosier's and Cugino's employers, and thus replicate Plaintiff's claims against Defendants Archdale and High Point, "a municipality cannot be held liable solely because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell v. Department of Soc. Servs., 436 U.S. 658, 691 (1978) (emphasis in original). "Only in cases where the municipality causes the deprivation 'through an official policy or custom' will liability attach." Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (quoting Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999)). "Because section 1983 was not designed to impose municipal liability under the doctrine of respondeat superior, the

'official policy' requirement was 'intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby to make clear that municipal liability is limited to action for which the municipality is actually responsible.'" <u>Riddick v. School Bd. of Portsmouth</u>, 238 F.3d 518, 523 (4th Cir. 2000) (quoting <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 479 (1986)). "To state a cause of action against a municipality, a section 1983 plaintiff must plead (1) the existence of an official policy or custom; (2) that the policy or custom is fairly attributable to the municipality; and (3) that the policy or custom proximately caused the deprivation of a constitutional right." <u>Pettitford v. City of Greensboro</u>, 556 F. Supp. 2d 512, 530 (M.D.N.C. 2008).

Here, Plaintiff has not even alleged (much less come forward with evidence to show) that any official custom or policy of the defendant-municipalities caused any constitutional deprivation. The only relevant policies mentioned in the record require the handcuffing of all arrestees behind their back.[5] For the reasons set out

_____

[5] Plaintiff's Responses to the Motions for Summary Judgment assert that Defendants did not appropriately respond to his requests for copies of their policies. (Docket Entry 83 at 5); Docket Entry 84 at 5-6.) However, he does not even allege that any other policy impacted his case, let alone explain how Defendants' policies other than handcuffing him

-24-

previously, Defendant Hosier and Detective Chewning's application of those policies did not limit Plaintiff's ability to communicate in a way that violated his federal statutory or constitutional rights. Therefore, Defendants Archdale and High Point also have shown entitlement to summary judgment on Plaintiff's Section 1983 claims.

## VI. Conclusion

The record does not contain evidence sufficient to support any of Plaintiff's claims.

**IT IS THEREFORE RECOMMENDED** that Defendants' Motions for Summary Judgment (Docket Entries 71, 74) be granted, that Defendants' Motions to Dismiss (Docket Entries 46, 50) be denied as moot, and that Judgment be entered against Plaintiff.

This, the 15th day of August, 2019.


                          /s/ L. Patrick Auld
                         **L. Patrick Auld**
                  **United States Magistrate Judge**




_____

behind his back could have violated his rights.  (See id.)

-25-